*Court of Appeals*
*Fourth Court of Appeals District of Texas*





## MEMORANDUM OPINION

No. 04-11-00768-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

**VALEMAS, INC.**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-15772
Honorable David A. Berchelmann, Jr., Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:     Karen Angelini, Justice
          Phylis J. Speedlin, Justice
          Marialyn Barnard, Justice

Delivered and Filed:  June 13, 2012

AFFIRMED

This is an interlocutory appeal from the trial court's order denying a plea to the jurisdiction filed by appellant City of San Antonio ("the City"). On appeal, the City raises two issues challenging the trial court's denial. We affirm.

### BACKGROUND

In 2005, the City entered into a contract with Valemas, Inc. ("Valemas"). Pursuant to the contract, Valemas was to provide extensive landscaping renovation in Brackenridge Park.

Valemas was to provide all machinery, labor, materials, and supervision for the project. Valemas entered into subcontracts with numerous subcontractors and suppliers to perform work on the Brackenridge Park project. The subcontractors included L. Payne Constructors ("Payne").

Valemas began work on the project on January 27, 2005. According to Valemas, during the course of the project, the City, among other things, delayed in obtaining necessary approvals and permits, was slow in obtaining necessary amended drawings, mandated the use of specific suppliers, and altered the scope of the project and increased the amount of work to be done. Valemas claimed that as a result of the City's acts and omissions, the contract price increased to $2,552,200.17 and the contractual completion date of 250 days was impossible. The project concluded on December 30, 2006. According to Valemas, the City's actions resulted in increased costs not only to Valemas, but to its subcontractors, including Payne. Valemas claimed it and the subcontractors incurred damages for extra work, delay, downtime, additional equipment charges, etc.

Valemas claimed the City refused to pay not only for the additional balance due because of the delays and changes, but also refused to pay the balance on the original contract price. As a result, Valemas was unable to pay Payne. In 2007, Valemas filed suit against the City alleging breach of contract. In May 2010, Payne filed a plea in intervention and a cross-action, seeking damages for breach of contract, or in the alternative quantum meruit or promissory estoppel. The cross-action was originally against Valemas, but Payne then amended its intervention and cross-action to include the City as a cross-defendant. The amendment of the cross-action came after Valemas and Payne entered into a pass through agreement, which allows a contracting party to assert a claim against the party with whom it contracted on behalf of another party who was

not a party to the contract. However, in January 2011, Payne filed a notice of nonsuit as to the City.

The matter then proceeded between Valemas and the City. After answering and asserting numerous affirmative defenses, the City filed a plea to the jurisdiction. In its plea to the jurisdiction, the City asserted Valemas's suit had to be dismissed for lack of jurisdiction because it was asserting a claim not on its own behalf, but on behalf of Payne under a "pass through agreement,"[1] and there is no statutory waiver of immunity for such a claim.

The trial court held a hearing on the City's plea. At that hearing, the City conceded that under section 271.152 of the Texas Local Government Code, the City "waives sovereign immunity to suit for adjudicating a claim for breach of contract subject to the terms and conditions of Chapter 271." The City asserted, however, that waiver was not applicable here because even though Valemas brought the breach of contract suit, it was not, in actuality, seeking to recover under its contract with the City, but was pursuing claims on behalf of Payne, who was not a party to the contract, through a pass through agreement. Because Payne has no written contract with the City, the City argued immunity was not waived under section 271.152 and the trial court was without jurisdiction. Alternatively, the City argued the anti-assignment clause in the contract precluded Valemas from asserting Payne's breach of contract claim.

At the conclusion of the hearing, the trial court took the matter under advisement. On October 24, 2011, the trial court signed an order denying the City's plea to the jurisdiction. The City then perfected this appeal.

---

[1] Under a "pass through agreement," a party agrees to pursue another party's claim or claims against a third party. *See Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 610 (Tex. 2004). Such claims are referred to as pass through claims, which are claims (1) by a party who has suffered damages, (2) against a responsible party with whom it has no contract, and presented through an intervening party who has a contractual relationship with both. *Id.* Typically, the contractor remains liable to the subcontractor, but only to the extent the contractor receives payment from the owner. *Id.*

**ANALYSIS**

On appeal, the City raises two issues challenging the trial court's order. The City first contends the trial court erred in denying its plea to the jurisdiction because there is no express waiver of immunity in section 271.152 of the Local Government Code for a subcontractor's pass through claim. Alternatively, the City argues that dismissal was required because of the anti-assignment clause in the contract between Valemas and the City. We consider each issue in turn.

***Waiver of Sovereign Immunity & Pass through Claims***

The City first contends the trial court erred in refusing to dismiss Valemas's suit for lack of jurisdiction because Valemas was asserting a claim not on its own behalf, but on behalf of Payne under a "pass through agreement," and there is no statutory waiver of immunity for such a claim. As noted above, under a "pass through agreement," a party agrees to pursue another party's claim or claims against a third party. *See Interstate Contracting Corp.*, 135 S.W.3d at 610. These "pass through claims" are claims by a party (here, a subcontractor) who has suffered damages against a responsible party (here, the City) with whom it has no contract, presented through an intervening party (here, a contractor) who has a contractual relationship with both. *Id.*

Although the City concedes that under section 271.152 of the Texas Local Government Code, sovereign immunity is waived for suits adjudicating a claim for breach of contract between the City and parties it contracts with, waiver is not applicable here. The City asserts that even though Valemas brought the breach of contract suit, it was pursuing claims on behalf of Payne, who was not a party to the contract, by way of a pass through agreement between Valemas and Payne. Thus, the question is whether section 271.152 of the Local Government Code waives the City's immunity for a breach of contract suit brought by a contracting party

when the contracting party is seeking recovery based on a pass through agreement with a party that did not contract with the City.

*Standard of Review*

A plea to the jurisdiction based on governmental immunity[2] challenges a trial court's subject matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). Because the existence or absence of subject matter jurisdiction is a question of law, we must review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224-26 (Tex. 2004); *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 337 (Tex. App.—San Antonio 2010, no pet.). In conducting our de novo review, we look to the plaintiff's petition to determine whether the facts as pled affirmatively demonstrate that jurisdiction exists. *Holland*, 221 S.W.3d at 642-43. We must accept the allegations in the petition as true, construe them in favor of the pleading party, and examine the pleader's intent. *Stevens*, 330 S.W.3d at 337. We also consider any evidence relevant to jurisdiction without considering the merits of the claim beyond the extent necessary to determine jurisdiction. *Miranda*, 133 S.W.3d at 226-27. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdiction issue, the trial court rules on the plea as a matter of law. *Id.* at 228. Here, we find the evidence presented is not probative of the existence of any disputed jurisdictional facts, and therefore, we must decide the existence of jurisdiction as a matter of law.

---

[2] Although the phrases "sovereign immunity" and "governmental immunity" are often used interchangeably, the phrase "sovereign immunity" technically applies to various divisions of state government, e.g., agencies, boards, hospitals, and universities. *Wight Realty Interests, Ltd. v. City of Friendswood*, 333 S.W.3d 792, 796 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The phrase "governmental immunity," on the other hand, protects political subdivisions of the state, e.g., counties, cities, and school districts. *Id.* As the City is the relevant party in this appeal, the phrase governmental immunity is proper. *See id.*

*Application*

We begin our analysis by noting that Texas recognizes the validity of pass through claims. *See Interstate Contracting Corp.*, 135 S.W.3d at 619; *Alamo Cmty. Coll. Dist. v. Browning Constr. Co.*, 131 S.W.3d 145, 159-60 (Tex. App.—San Antonio 2004, pet. denied). In *Interstate Contracting*, the supreme court was presented with a certified question from the Fifth Circuit, asking whether Texas recognized pass through claims, that is, whether a contractor could assert a claim against an owner on a subcontractor's behalf when there is no privity of contract between the subcontractor and the owner. *Id.* at 607. The supreme court concluded Texas would allow pass through claims, but it did not answer the question that is now posed to this court for review, i.e., whether governmental immunity is waived under section 271.152 for suit based on such claims. *Id.* at 620. The supreme court explained why it specifically chose not to address the issue of sovereign immunity in *Interstate Contracting*, stating:

> Although the questions certified do not limit our answers, we decline to extend our answers in this case to the issue of sovereign immunity, which is well beyond the scope of the questions certified. Doing so would require us to venture into the facts of this particular case and analyze the merits of the parties' claims at issue before the Fifth Circuit Court of Appeals, rather than provide answers solely as to the status of the Texas law on the questions asked. How our answer is to be applied to the facts of this case is the province of the certifying court. *See Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 798 (Tex.1992).

*Id.*[3] The supreme court did not want to venture into the facts of the case and analyze the merits of the issue before the federal appellate court. *Id.* However, the applicability of sovereign immunity to pass through claims is now squarely before this court.

Here, it is undisputed that immunity is waived for any contract claims brought by Valemas on its own behalf, assuming the damages sought are within the statutory limitations.

---

[3] Although the Fifth Circuit applied the Texas Supreme Court's answer to the certified question in *Interstate Contracting*, allowing a contractor to sue the City of Dallas on behalf of a subcontractor based on a pass through agreement, the issue of sovereign immunity was not raised. *See Interstate Contracting Corp. v. City of Dallas, Texas*, 407 F.3d 708 (5th Cir. 2005).

*See id.* § 271.153.  It is also undisputed that Payne does not have a written contract with the City, and therefore could not assert a breach of contract action against the City on its own due to lack of privity.  *See Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 912 (Tex. App.—Dallas 2008, no pet.) (holding privity between injured party and party to be held liable is generally essential element for recovery in breach of contract action).  Given that Texas recognizes the validity of pass through claims, the question is whether Valemas, as a party who has a contract with the City, can assert a pass through claim on Payne's behalf against the City based on section 271.152, or whether the City has immunity from such a claim.

Sovereign and governmental immunity protect the State and its political subdivisions from suits for money damages.  *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006).  The Texas Legislature has mandated that statutes should not be construed to waive immunity unless the waiver is stated in clear and unambiguous language.  *City of Galveston v. State*, 217 S.W.3d 466, 469; *see* TEX. GOV'T CODE ANN. § 311.034 (West Supp. 2011) (stating statute shall not be construed as waiver of sovereign immunity unless waiver is effected in clear and unambiguous language).  Generally, any ambiguity as to the existence of waiver is resolved in favor of immunity.  *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009); *City of San Antonio v. Caruso*, 350 S.W.3d 247, 250 (Tex. App.—San Antonio 2011, pet. denied).

In 2005, the Texas Legislature passed HB 2039, enacting sections 271.151-.160 of the Texas Local Government Code.  Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 1, 2005 Tex. Gen. Laws 1548 (codified at TEX. LOC. GOV'T CODE ANN. § 271.151-.160 (West 2005); *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006).  These provisions were enacted to waive local governmental entities' immunity from suit for breach of contract under certain circumstances.

*See id.* Valemas contends its suit, which is based on the pass through agreement with Payne, falls within these provisions. The City counters that it does not fall within the statute because waiver based on a pass through agreement was not stated in clear and unambiguous language. The resolution of this issue requires this court to interpret section 271.152 and the companion provisions thereto.

It is well-settled that statutory construction is a question of law. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *Caruso*, 350 S.W.3d at 250. Our objective in interpreting any statute is to determine the Legislature's intent. *Hughes*, 246 S.W.3d at 625; *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). We look to the plain meaning of the statute, construing it as a whole to give effect to every part, unless such a construction would lead to absurd or nonsensical results. *Hughes*, 246 S.W.3d at 625-26; *Ademaj*, 243 S.W.3d at 621. We may consider the object of the statute, legislative history, and the consequences of a proposed construction. TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (West 2005); *see Caruso*, 350 S.W.3d at 250; *First-Citizens Bank & Trust Co. v. Great Austin Area Telecomm. Network*, 318 S.W.3d 560, 567 (Tex. App.—Austin 2010, no pet.). We may consider these things whether or not the statute is ambiguous. TEX. GOV'T CODE ANN. § 311.023. With these principles in mind, we turn to section 271.152 to determine whether the Legislature waived immunity for breach of contract actions brought as a pass through claim.

The relevant statute in this appeal, section 271.152, sets forth under what circumstances local governmental entities waive immunity in breach of contract actions:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. Although we have found no cases directly addressing this provision's applicability to pass through claims, the Austin Court of Appeals has considered the statute with regard to assignments, and we find its analysis of the statute compelling, despite the City's protestations to the contrary, and adopt it here. *First-Citizens Bank & Trust Co. v. Great Austin Area Telecomm. Network*, 318 S.W.3d at 567-69; *see also Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *First-Citizens Bank & Trust Co.* to support holding that when governmental entity and contracting party enter into contract under subchapter I and denominate third-party beneficiary to contract, third-party beneficiary's claim falls within waiver of immunity authorized by section 271.152).

We begin with the plain language of section 271.152. Reviewing this language, we hold the waiver set forth in section 271.152 is not limited to suits brought by contract signatories for claims belonging solely to the signatories. Rather, "section 271.152 waives immunity for a class of suits–suits for the purpose of adjudicating a claim for breach of a contract subject to subchapter I." *See First-Citizens Bank & Trust Co.*, 318 S.W.3d at 567. In other words, section 271.152 waives immunity when a breach of contract action is brought against a governmental entity based on a contract subject to subchapter I. *Id*. Therefore, we must review the entirety of subchapter I to determine if the waiver stated in section 271.152 was intended to apply to pass through claims. *Id.* at 567-68.

As noted above, subchapter I includes sections 271.151 through 271.160, which:

- define the terms used in the subchapter, *see* TEX. LOC. GOV'T CODE ANN. § 271.151;

- provide for waiver, *see id.* § 271.152;

- limit damages that may be awarded, *see id* § 271.153;

- provide that adjudication procedures, e.g., notice requirements or alternate dispute resolution requirements, stated or incorporated in a contract are enforceable, *see id* § 271.154;

- provide that other available contract defenses are not waived, *see id* § 271.155;

- provide there is no waiver of immunity to suit in federal court, *see id* § 271.156;

- provide there is no waiver of immunity to suits for a negligent or intentional tort, *see id* § 271.157;

- note the subchapter is not a grant of immunity to suit to a local governmental entity, *see id* § 271.158;

- prohibit recovery of attorney's fees absent a contractual provision allowing recovery of such fees to the prevailing party, *see id* § 271.159; and

- note that a contract entered into by a local government entity is not a joint enterprise for purposes of liability, *see id* § 271.160.

We find nothing in any of these sections to show the Legislature intended to exclude pass through claims from the waiver provision in section 271.152. *See id.* §§ 271.152-.160.

Moreover, when we review the legislative history, it strongly suggests the Texas Legislature intended to enact a broad waiver for local governmental entities in the contractual setting. The Texas Supreme Court agrees. Quoting the bill analysis of the House Committee on Civil Practices, the supreme court stated, "by enacting section 271.152, the Legislature intended to loosen the immunity bar so 'that all local government entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits *arising from those contracts*.'" *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006) (quoting House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005)). Thus, the Legislature clearly intended the waiver to apply not only to signatories, not only to claims based

on the contracts themselves, but to claims "arising from" those contracts. Payne's pass through claim, as asserted by Valemas, clearly "arises from" the contract between the City and Valemas.

Further, the bill analysis suggests the enactment of section 271.152 was based on the Legislature's recognition of the inherent unfairness in allowing governmental entities to enter into contracts, but then avoid its obligations under such contracts by claiming immunity. *See First-Citizens Bank & Trust Co.*, 318 S.W.3d at 568; *see* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005). As noted by supporters of the bill, because of the threat of immunity, many qualified contractors declined to bid on local government projects, considering it too risky. House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005). This was especially true for small businesses which generally did not bid at all. *Id.* The bill was enacted to "encourage a broader, more qualified, and more diverse range of bidders for local government contracts." *First-Citizens Bank & Trust Co.*, 318 S.W.3d at 568 (citing House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005).

In the context of this case, the "inherent unfairness" is obvious should the statute be interpreted as to permit immunity for pass through claims. It is common knowledge that when a local governmental entity enters into a contract for extensive renovations or construction, the general contractor with whom it contracts will subcontract with others. If a local governmental entity is immune from pass through claims, requiring subcontractors to sue the general contractor to recover rather than rely on the general contractor to pursue such claims, smaller subcontractors will be less likely to risk entering such agreements–knowing that in the event the contractor is unable to pay because of non-payment by the governmental entity they will be forced to engage in expensive litigation, the cost of which they may not be able to bear, or simply write the matter off as a loss. This puts subcontractors into the same position as

contractors, and as recognized by the supporters of the bill that proposed section 271.152 in the context of general contractors, will make many highly qualified subcontractors, especially small businesses, hesitant to enter into such contracts. This will discourage and disadvantage a diverse range of bidding subcontractors and limit the choices of general contractors in direct opposition to what the bill was intended to do.

Accordingly, we hold that just as it is inconsistent with the purpose of section 271.152 to construe it to deny waiver to assignees of those who enter into contracts subject to subchapter I, so is it inconsistent to deny waiver to pass through claims brought by a contractor against a local governmental entity on a subcontractor's behalf. To hold otherwise would subject subcontractors to the same risk of non-redressable breach the statue sought to eliminate, resulting in subcontractors suffering the same problems once suffered by general contractors prior to the enactment of section 271.152.

Our interpretation does not, as the City suggests, extend liability beyond what the statute contemplates. Section 271.153 defines the limits of liability and specifically provides that recovery under subchapter I is limited to the balance due and owed under the contract, any amount owed for change orders or additional work the contractor is directed to perform by the local governmental entity, and interest as allowed by law. TEX. LOC. GOV'T CODE ANN. § 271.153. Thus, Valemas can only recover what is owed on the contract–the fact that any recovery may be payable to Payne does not extend the City's liability. This is borne out by a close review of Valemas's pleadings in which it seeks recovery based on its contract with the City.

Based on the foregoing, we hold the trial court did not err in denying the City's plea to the jurisdiction based on an absence of immunity. The doctrine of governmental immunity does

not preclude Valemas from asserting a pass through claim on Payne's behalf. We therefore overrule the City's first issue.

### *Sovereign Immunity & Anti-Assignment Clauses*

In the alternative, the City contends that even if this court determines there is waiver of immunity for the pass through claims, the anti-assignment clause in the City's contract precludes Valemas from asserting Payne's claims. Although the City did not mention the concept of standing, we find that given this issue was raised in the plea to the jurisdiction, it appears the City is arguing Valemas lacks standing to assert Payne's claims based on the anti-assignment clause. Assuming without deciding that Valemas's suit even involves an assignment, we disagree with the City's argument.

### *Standard of Review*

Standing is a prerequisite to subject matter jurisdiction, and subject matter jurisdiction is essential to a court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). A plaintiff may not maintain a cause of action unless he has standing to litigate the matters that are the basis of the lawsuit. *RDG P'ship v. Long*, 350 S.W.3d 262, 271 (Tex. App.—San Antonio 2011, no pet.). A claim that a party lacks standing may be raised by a plea to the jurisdiction. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 553-54. A party's standing to see relief is a question of law we review de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); *Long*, 350 S.W.3d at 271.

### *Application*

In their contract, the City and Valemas agreed that:

> [Valemas] shall not assign, transfer, convey, sub-let or otherwise dispose of this contract, or any portion thereof, or any right, title, or interest in, to or under the same, without previous consent in writing of the City.

The City contends this anti-assignment clause precluded Valemas from asserting a breach of contract claim on behalf of Payne, i.e., that by suing the City to recover for Payne, Valemas had assigned Payne rights under the contract. However, Texas law distinguishes between a contracting party's ability to assign rights under a contract containing an anti-assignment clause and that same party's ability to assign causes of action arising from the breach of that contract. *E.g., Dearborn Stove Co. v. Caples*, 149 Tex. 563, 236 S.W.2d 486-490 (1951) (holding fact that lease was not assignable did not prevent valid assignment of overcharge claim arising from lease); *City of Brownsville ex. rel. Pub. Utils. Bd. v. AEP Tex. Cent. Co.*, 348 S.W.3d 348, 358 (Tex. App.—Dallas 2011, no pet.) (holding anti-assignment clause that precluded assignment of rights and duties under contract did not preclude assignment of cause of action for breach of the contract); *Pagosa Oil & Gas, L.L.C. v. Marrs and Smith P'ship*, 323 S.W.3d 203, 211–12 (Tex. App.—El Paso 2010, pet. denied) (holding mineral lessee was not precluded from assigning cause of action for breach of lease to another despite language in assignment clause requiring consent to assignment); *Lindsay ex rel. Lindsay v. S. San Antonio Indep. Sch. Dist.*, 983 S.W.2d 778, 779-80 (Tex. App.—San Antonio 1998, no pet.) (recognizing assignability of decedent's cause of action for alleged breach of employment contract despite estate's inability to assign contract itself). Absent specific circumstances not present in this case, causes of action in Texas are freely assignable. *See State Farm Fire & Cas. Co., v. Gandy*, 925 S.W.2d 696, 705-07 (Tex. 1996).

In the agreement between the City and Valemas, Valemas agreed not to "assign, transfer, convey, sub-let or otherwise dispose of this contract, or any portion thereof, or any right, title, or interest in, to or under the same" without the City's consent. We look to the plain wording of the anti-assignment clause to determine whether it prohibited Valemas from assigning its breach of

contract action to Payne. *See AEP Tex. Cent. Co.*, 348 S.W.3d at 358; *Pagosa Oil & Gas*, 323 S.W.3d at 212. We hold it does not. The clause merely states Valemas's rights and interests under the agreement were not assignable without written consent of the City. The provision does not indicate an intent to limit Valemas's ability to assign causes of action arising from an alleged breach of the contract. Because Valemas maintained its common law rights to assign its causes of action arising from the contract, it would have standing to assert Payne's claims by virtue of the assignment. *See id.*

This anti-assignment clause in this case is similar to the one reviewed in *AEP Tex. Centr. Co.* In that case, AEP Texas Central Company ("AEP"), the appellee, raised a cross-point contending the City of Brownsville lacked standing to assert the causes of action at issue in the case based on an anti-assignment clause in the purchase and sale agreement between AEP and OMPA. *AEP Tex. Cent. Co.*, 348 S.W.3d at 358. The anti-assignment clause stated: "The rights under this Agreement shall not be assignable or transferable nor the duties delegable by either Party without the prior written consent of the other Party, which consent may be granted or withheld in such other Party's sole discretion." *Id.* The Dallas Court of Appeals held this clause did not preclude OMPA from assigning its breach of contract action against AEP to the City. *Id.* Rather, the clause merely precluded the assignment of rights and duties under the contract. *Id.*

As noted above, the same is true with regard to the anti-assignment clause in the contract between the City and Valemas. The contract merely precludes Valemas from assigning its rights and interests under the contract to another without the City's consent. A breach of contract claim is not a right or interest identified in the contract. Accordingly, we resolve this issue against the City.

- 15 -

## CONCLUSION

Based on our analysis of the issues and our interpretation of the law, the trial court did not err in denying the City's plea to the jurisdiction. The City is not entitled to immunity from Valemas's breach of contract action and Valemas is not precluded from asserting the breach of contract claim by the anti-assignment clause in the contract. We therefore affirm the trial court's judgment.

Marialyn Barnard, Justice